REGAN, Judge.
Plaintiff, the Metropolitan Life Insurance Company, insurer of the deceased, Murphy Alio, instituted this concursus proceedings [1] and named as co-defendants, Anna Mullen Alio, widow of Murphy Alio and Mrs. Elmer T. Groue, Jr., his sister, after both had claimed the proceeds of two industrial life insurance policies, valued at $685.79, as the beneficiary of the decedent. The insurer deposited this amount in the registry of court[2] for distribution to the adjudicatee *834 upon final determination of the respective parties’ rights.
Defendant, Mrs. Alio, answered, asserting her right to the above amount as the legal heir of her intestate husband’s community property, consisting solely of the policies of insurance in which no beneficiary was designated. The widow contended that, by operation of law, she is entitled to half the proceeds of the policy as her husband’s heir and the other half in her own right.
Defendant, Mrs. Groue, predicated her claim to the interpleaded funds on the fact that she incurred an indebtedness in excess of $1,200, which was expended in the course of decedent’s last illness and for his funeral; in addition thereto, she acted as curatrix for her interdicted brother until his death. Alternatively, she insisted that the amounts emanating from the respective policies were separate property, and as a collateral heir, she is entitled to the proceeds thereof.
From a judgment recognizing Mrs. Groue as the lawful owner of the deposited funds, Anna Mullen Alio has prosecuted this appeal.
The facts are relatively undisputed. On November 25’, 1926, the decedent married Anna Mullen Alio, and they lived together until the early 19S0s when he developed a mental illness, which grew progressively worse until he became almost completely irrational and remained in that condition until his death on February 14, 1954. Approximately 18 months before his death, Murphy Alio and his wife moved into the home of Allo’s mother in order to facilitate his care. This arrangement continued for eight months when, because of family altercations, Anna Alio moved to her own home where she resided alone.
Mrs. Groue then instituted interdiction proceedings against Alio and was appointed curatrix in order to legally cash his welfare checks while he lived.
Mrs. Alio only learned of her husband’s death through a neighbor; however, his family made the necessary funeral arrangements and assumed full responsibility for the cost thereof, which amounted to the sum of $689.81.
The pertinent facts relative to the policies of insurance are that on March 9, 1936, plaintiff issued two industrial whole life policies to Murphy Alio. Under these contracts the insurer obligated itself to pay $685.79 to the proper beneficiary upon proof of death of the insured. A short time after the death of Alio both defendants claimed that they were legally or equitably entitled to the insurance. Hence, this suit.
The policies contain a “facility of payment” clause, providing for payment upon the death of the insured to “ * * * the executor- or administrator of the insured, unless payment be made under the provisions of the next succeeding paragraph.
“The Company may make payment or grant any non-forfeiture privilege provided herein to the Insured, husband or wife, or any relative by blood or connection by marriage of the Insured, or to any other person appearing to said company to be equitably entitled to the same by reason of having incurred expense on behalf of the Insured, or for his or her burial, * * * ”
The trial judge concluded from the above paragraph that the sister, Mrs. Groue, was equitably entitled to the proceeds thereof, since she paid the funeral expenses, which exceeded the amount of both policies. He also reasoned that Mrs. Groue’s .claim primed that of the widow, even though she *835 paid the premiums as they fell due on the policies out of community funds.
Therefore, the question which this appeal has posed for our consideration is whether the insurance should be distributed in accordance with the principles of equity by virtue of the “facility of payment” clause contained in the contracts or in conformity with the positive law of this state regulating intestate successions, specifically LSA-C.C. Art. 915.[3]
Appellant, Mrs. Alio, insists that the policies in dispute are community property, for they were issued during the marriage and the premiums were paid with community funds.[4] She also maintains that as there was no named beneficiary, the proceeds therefrom inure to the estate of the decedent, and the distribution is governed by Louisiana law regulating intestate successions, and this fact is even recognized by the Insurance Code.[5] Therefore, she is entitled to half the community property in her own right and the other half as her husband’s heir by operation of law.
Mrs. Alio also claims these funds free from any statutory liens or debts of her husband’s estate.[6]
Counsel for appellee argues that under the terms of the policy, Mrs. Alio does not qualify as a lawful beneficiary because the “facility of payment” clause confers upon the insurer the right to exercise its discretion in distributing the proceeds according to equitable principles, and since the insurer instituted this interpleader proceeding, it transferred that obligation to the court.
The purpose of the “facility of payment” clause in a contract of life insurance has often been discussed in our jurisprudence. It is designed primarily to limit the liability of the insurer, who, in good faith, pays policy proceeds to an applicant apparently equitably entitled to receive them. It was not meant to give the insurer the arbitrary power to choose or designate a beneficiary and thus absolutely ignore the codal law of this state. Some time ago, in discussing this standard provision contained in these policies of insurance, we said :[7]
*836 “The facility of payment clause does not afford to the insurer the absolute right, unquestioned and unchallenged, to exercise its own discretion and judgment in making payment even to those persons who are included within its terms. The facility of payment clause, as we have heretofore held, merely gives to the insurer protection if, in the exercise of its discretion and acting on such information as it has before it, it makes payment in good faith to the person apparently equitably entitled thereto. That is all that we said in Dorsey v. Metropolitan Life Insurance Company, La.App., 145 So. 304, 310. We did not hold that payment might be made to any one included within the clause and without any serious effort on the part of the insurer to make proper payment to the proper person * * *.
“We also held to the same effect in Wickes v. Metropolitan Life Insurance Company, La.App., 170 So. 48, in which we said that the insurer, in order to obtain the protection of the facility of payment clause, must, in good faith, attempt to make payment to the person equitably entitled thereto. In each of those cases an application was made to the Supreme Court for writ of cer-tiorari and in each instance it was refused. * * * ”
Therefore, the fundamental purpose of the “facility of payment” clause is to protect the insurer in the event of erroneous payments made in good faith; however, it is not, as we have seen, the sole yardstick to be used in ascertaining the proper beneficiary. Obviously, the insurer herein was uncertain, and instead of risking making an erroneous payment and then later availing itself of the defense offered by this clause, it has, out of an abundance of caution, presented the matter to the court for adjudication.
In view of what we have said here-inabove, we are of the opinion that the trial court erred in distributing the funds to decedent’s sister, because, in the absence of a named beneficiary, the proceeds belong to the estate; therefore, its distribution is regulated by the rationale of LSA-C.C. Art. 915, rather than the “facility of payment” clause contained in the policies.
Counsel for Mrs. Alio insists that she is entitled to half the proceeds in her own right and the other half as heir by operation of law. We are unable to decide this issue since the record fails to establish, with that certainty required by law, whether any ascendants, descendants or adopted children, in addition to his wife, have survived the deceased. Therefore, in order to further the ends of justice and in conformity with the authority conferred on us by virtue of C.P. Art. 906 [8], we are of the opinion that the matter should be remanded to the trial court in order that the requisite evidence may be adduced therein to adequately prove heirship.
For the reasons assigned, the judgment appealed from is reversed, and it is now ordered, adjudged and decreed that this matter be remanded to the lower court for further proceedings consistent with the views hereinabove expressed. The costs of this appeal are to be paid by defendant Mrs. Groue. Plaintiff, the Metropolitan Life In *837 surance Company, has assumed the costs incurred in the district court, as is evidenced by a stipulation contained in the record. All other costs are to await the final result of the litigation.
Reversed and remanded.

. “Interpleader” is an ancient equitable remedy which recognizes the right of a distinterested stakeholder, from whom several persons claim the same debt, to have conflicting claimants litigate the matter among themselves without embroiling the stakeholder in their controversy; therefore, each claimant may be said to occupy the dual position of plaintiff and defendant with reference to the other claimant.

. LSA-R.S. 13:4811 — “Whenever any person, firm, partnership, corporation, or association of persons is in possession of any money, which is claimed by two or *834 more persons, or upon wliich two or more persons are claiming a lien or privilege, then such person, firm, partnership, corporation, or association of persons holding the money, may deposit it in the registry of the district court having jurisdiction, and shall thereafter be relieved of all liability for the payment of the money on complying with the requirements set out in R..S. 13:4811 through 13:4817.”

. “Wlien either husband or wife shall die, leaving neither a father nor mother nor descendants, and without having disposed by last will and testament of his or her share of the community property, such undisposed of share shall be inherited by the surviving spouse in full ownership. In the event the deceased leave descendants, his or her share in the community estate shall be inherited by such descendants in the manner provided by law. Should the deceased leave no descendants, but a father and mother, or either, then the share of the deceased in the community estate shall be divided in two equal portions, one of which shall go to the father and mother or the survivor of them, and the other portion shall go to the surviving spouse, who, together with father or mother inheriting in the absence of descendants, as provided above, shall inherit as a legal heir by operation of law, and without the necessity of compliance with the forms of law provided in this chapter for the placing of irregular heirs in possession of the successions to which they are called.”

. These facts are established by the record.

. LSA-R.S. 22:648 — “In all policies of life or endowment insurance and in all annuity contracts where the estate of the insured or annuitant is a beneficiary or payee, the widow, or heir, or heirs of the insured or annuitant decedent shall be entitled to the proceeds of such policies or contracts according to the laws of distribution affecting the succession of the decedent even though they have renounced his succession with the same effect as if said renunciation had not taken place.”

. LSA-R.S. 22:647, subd. A. “The lawful beneficiary, assignee, or payee, including the insured’s estate, of a life insurance policy or endowment policy, heretofore or hereafter effected shall be entitled to the proceeds and avails of the policy against the creditors and representatives of the insured and of the person effecting the policy or the estate of either, and against the heirs and legatees of either such person, and such proceeds and avails shall also be exempt from all liability for any debt of such beneficiary, payee, or as-signee or estate, existing at the time the proceeds or avails are made available for his own use.”

. Hooks v. Metropolitan Life Insurance Company, La.App.1937, 171 So. 601, 604. See also Abraham v. Alexander, 1909, *836 7 Orleans App. 6, wherein we said: “It is apparent that the clause * * * was intended merely to protect the company from erroneous payment in good faith and possible consequent litigation, and was not meant to give the insurer the power to choose and designate a bene-Sciaz-y.”

. “But if the court shall think it not possible to pronounce definitely on the cause, in the state in which it is, either because the parties have failed to adduce the necessary testimony, or because the inferior court refuse to receive it, or otherwise, it may, according to circumstances, remand the cause to the lower court, with instructions as to the testimony which it shall receive, to the end that it may decide according to law.”